BONNETT, FAIRBOURN,
FRIEDMAN & BALINT, P.C.
ELAINE A. RYAN (012870)
PATRICIA SYVERSON (020191)
LINDSEY M. GOMEZ-GRAY (027416)
2325 E. Camelback Rd., Suite 300
Phoenix, AZ 85016
Tel: (602) 274-1100
Fax: (602) 274-1199
eryan@bffb.com
psyverson@bffb.com
lgomez@bffb.com

*Attorneys for Plaintiff*
*[Additional attorneys listed on signature page]*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| CONSTANCE WERTHE, a Wisconsin Resident, on Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>-against-<br><br>GERBER PRODUCTS CO., a Michigan corporation, d/b/a NESTLÉ NUTRITION, NESTLÉ INFANT NUTRITION, and NESTLÉ NUTRITION NORTH AMERICA<br><br>Defendant. | CASE NO.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Constance Werthe, by and through her undersigned attorneys, brings this action on behalf of herself and all other similarly situated consumers on personal knowledge as to herself and her activities, and on information and belief as to all other matters, against Defendant, Gerber Products Co. d/b/a Nestlé Nutrition, Nestlé Infant Nutrition, and Nestlé

Nutrition North America ("Gerber" or "Defendant"), and alleges as follows:

## NATURE OF THE ACTION

1. This is a consumer protection class action claim brought against Defendant Gerber pursuant to Arizona consumer fraud statutes and common law. This action is brought by Plaintiff, on behalf of herself and Classes of persons who purchased Gerber Good Start Gentle infant formula during the period from and including January 1, 2011 through such time as the effects of Defendants' fraudulent conduct ceases (the "Class Period").

2. Since at least 2011, Gerber has manufactured, advertised, labeled, offered for sale, distributed, and sold Gerber Good Start Gentle infant formula to the public. Gerber has advertised this infant formula through television commercials, magazine ads, point-of-sale displays, product packaging, online ads, and other advertising and promotional materials. Gerber has represented, among other things, that Gerber Good Start Gentle prevents or reduces the risk of developing allergies.

3. This packaging, among other things, includes labels that state "Meets FDA" and "Qualified Health Claim" in spite of the fact that the FDA rejected Gerber's requests to state that a relationship existed between the Partially Hydrolyzed Whey Protein ("PHWP") in its Good Start Gentle infant formula and a reduced risk of atopic dermatitis in infants.

4. As a result of these deceptive and unfounded claims, Plaintiff and members of the Classes have relied on Gerber's claims and purchased a product that they believed would help reduce the risk of allergies in infants, but in reality does no such thing. Plaintiffs and

other members of the Class have suffered an ascertainable loss. Moreover, Gerber has been able to charge a significant premium for the infant formula over other, traditional infant formulas.

5. Plaintiff brings this lawsuit against Defendant on behalf of herself and other similarly situated consumers who purchased the infant formula in order to (a) halt the dissemination of Defendant's deceptive advertising message, (b) correct the false and misleading perception Defendant has created in the minds of consumers, and (c) secure redress for consumers who have purchased the infant formula. Plaintiff, on behalf of herself and all others similarly situated, allege violations of the Arizona Consumer Fraud Act, breach of express warranty, and unjust enrichment under common law.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The aggregate claims of Plaintiff and the proposed Class members exceed $5,000,000, exclusive of interest and costs, and there is diversity of citizenship between at least one member of the proposed Class and Defendant.

7. This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself of the privilege of conducting business in the State of Arizona.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this district and because Defendant:

      a.    has intentionally availed itself of the laws and markets within this district through the promotion, marketing, distribution and sale of its products in this district;

      b.    does substantial business in this district; and

      c.    is subject to personal jurisdiction in this district.

## PARTIES

*Plaintiff*

9. Plaintiff Constance Werthe is an individual residing in LaCrosse, Wisconsin, and thus is a citizen of Wisconsin. During the relevant period, Plaintiff was exposed to and saw Defendant's material deceptive labeling and advertising claims, purchased the premium-priced Gerber Good Start Gentle Formula and, as a result of the material deceptive claims, suffered injury in fact and lost money.

10. Plaintiff purchased Gerber Good Start Gentle Formula in Bullhead City, Arizona during the Class Period. If not for Gerber's deceptive representations, Plaintiff would not have bought the formula, or would not have paid as much as she did for it.

*Defendant*

11. Gerber Products Co. also doing business as Nestlé Nutrition, Nestlé Infant Nutrition, and Nestlé Nutrition North America, is a Michigan Corporation with its principal place of business at 12 Vreeland Road, #2, Florham Park, New Jersey.

12. Gerber transacts or has transacted business in this district and throughout the United States. At all times material to this Complaint, acting alone or in concert with others,

4

Gerber has labeled, advertised, marketed, distributed, or sold Gerber Good Start Gentle infant formula to consumers throughout the United States.

## FACTUAL ALLEGATIONS

13. Gerber Good Start Gentle formula is made with partially hydrolyzed whey proteins. Gerber advertises that the formula is easier to digest than formula made with intact cow's milk protein. Gerber also advertises that feeding this formula to infants with a family history of allergies prevents or reduces the risk that they will develop allergies.

14. Gerber Good Start Gentle is sold online and in grocery, department, and specialty baby stores. It sells at various price points depending on the seller, but it commonly retails for around $24 for 23.2 ounces of powdered formula.

15. To induce consumers to purchase Gerber Good Start Gentle, Defendant has disseminated or has caused to be disseminated advertisements, packaging, and promotional materials for Gerber Good Start Gentle, including, but not necessarily limited to, the attached Exhibits A through G.

16. For example, in Exhibit A, a television commercial depicts a smiling baby in various poses. A female announcer says, "You want your Gerber baby to have your imagination…Your smile…Your eyes…Not your allergies…But if you introduce formula, choose the Gerber Good Start Comfort Proteins Advantage…It's what makes Good Start formula easy to digest and may also provide protective benefits for your baby."

17. Exhibit B is a print advertisement depicting a baby's face on a canister of Gerber Good Start Gentle. The caption reads, "I love Mommy's eyes, not her allergies. If

5

you have allergies in your family, breastfeeding your baby can help reduce their risk. And, if you decide to introduce formula, research shows the formula you first provide your baby may make a difference. In the case of Gerber Good Start Gentle Formula, it's the Comfort Proteins Advantage that is easy to digest and may also deliver protective benefits. That's why Gerber Good Start Gentle Formula is nutrition inspired by breast milk."

18. Exhibit C is a gold label sticker on a formula canister stating, "1st & Only Routine Formula to Reduce the Risk of Developing Allergies."

19. Exhibit D is a print advertisement depicting a canister of Gerber Good Start Gentle. It states, "The first formula fed may make a difference. Gerber Good Start is the first and only infant formula that meets the criteria for a FDA Qualified Health Claim."

20. Exhibit E is a gold badge which is part of a supermarket display showing a canister of Gerber Good Start Gentle and price. It states, "1st and Only/Meets FDA Qualified Health Claim."

21. Exhibit F is part of a Gerber Good Start Gentle product label which states, "Gerber Good Start is the first and only formula brand made from 100% whey protein partially hydrolyzed, and that meets the criteria for a FDA Qualified Health Claim for atopic dermatitis."

22. Exhibit G is a magazine print advertisement that shows a mother feeding an infant from a bottle. The badge underneath the copy says, "1st Formula with FDA Qualified Health Claim".

6

23. The U.S. Food and Drug Administration ("FDA") evaluates health claims before permitting their use on labels for foods or dietary supplements. Under FDA regulations, a health claim explains the relationship between a substance (food or food component) and the reduced risk of a disease or health-related condition, e.g., "Diets low in saturated fats and cholesterol may reduce the risk of heart disease." To receive FDA approval for a health claim, a petitioner must demonstrate "significant scientific agreement among qualified experts that the claim is supported by the totality of publicly available scientific evidence for a substance/disease relationship." FDA, Questions and Answers: Qualified Health Claims in Food Labeling (Sept. 28, 2005), available at http://www.fda.gov/Food/IngredientsPackagingLabeling/LabelingNutrition/ucm207974.htm (last accessed Oct. 30, 2014). Pursuant to the 1990 Nutrition Labeling and Education Act, FDA can only issue a regulation authorizing a health claim in food labeling if the claim meets this significant scientific agreement standard.

24. If the relationship between a substance and a disease is not supported by significant scientific agreement, FDA may not issue a regulation to authorize the claim. A party, however, may petition the FDA to consider exercising its enforcement discretion for use of the claim in food labeling. If, after evaluating the petition, FDA determines there is some credible but limited evidence to support the claim, the agency will issue a letter outlining the circumstances under which it intends to consider exercising its enforcement discretion not to challenge the claim. The letter will specify, among other conditions, the

specific language that must be used to communicate the limited evidence supporting the claim. If FDA concludes there is no credible evidence, it may deny the petition.

25. In June 2005, Gerber petitioned the FDA for a health claim explaining the relationship between PHWP infant formula and reduced risk of food allergies in infants. In May 2006, FDA rejected Gerber's request, finding that there was "no credible" evidence to support the relationship between PHWP infant formula and a reduced risk of food allergy in infants. *See* Qualified Health Claims: Letter of Denial - 100 percent Partially Hydrolyzed Whey Protein in Infant Formula and Reduced Risk of Food Allergy in Infants (Docket No. 2005Q-0298) (May 11, 2006), *available at* http://www.fda.gov/Food/IngredientsPackagingLabeling/LabelingNutrition/ucm073313.htm (last accessed Oct. 30, 2014).

26. In 2009, Gerber petitioned the FDA for permission to use a qualified health claim describing the relationship between PWHP infant formula and reduced risk of *atopic dermatitis* in infants. Specifically, Gerber sought authorization for a claim stating that "emerging clinical research" shows that PHWP infant formula may reduce the risk of atopic dermatitis. FDA rejected the request and issued a letter indicating that it would consider exercising its enforcement discretion to allow Defendant to make a highly qualified health claim that "the relationship between 100% Whey-Protein Partially Hydrolyzed infant formulas and the reduced risk of atopic dermatitis is uncertain, because there is little scientific evidence for the relationship." *See* 100% Whey-Protein Partially Hydrolyzed Infant Formula and Reduced Risk of Atopic Dermatitis (May 24, 2011), *available at*

http://www.fda.gov/Food/IngredientsPackagingLabeling/LabelingNutrition/ucm256731.htm (last visited Oct. 30, 2014). Notwithstanding the FDA's letter of enforcement discretion, Gerber advertises its Gerber Good Start Gentle infant formula with, among other things, a circular gold seal or badge emblazoned with "1st and Only" in the center, "Meets FDA" in the top perimeter, and "Qualified Health Claim" in the bottom perimeter.

## CLASS DEFINITION AND ALLEGATIONS

27. Plaintiff brings this action on behalf of herself and members of the following Classes defined as follows :

> All persons who purchased one or more of Defendant's Gerber Good Start Gentle infant formula in the State of Arizona during the Class Period. Excluded from the Class are Defendant and its officers, directors and employees and those who purchased Gerber Good Start Gentle infant formula for the purpose of resale or who assert claims for personal injury (the "Arizona Class"); and

> All persons who purchased one or more of Defendant's Gerber Good Start Gentle infant formula in the United States of America during the Class Period. Excluded from the Class are Defendant and its officers, directors and employees and those who purchased Gerber Good Start Gentle infant formula for the purpose of resale or who assert claims for personal injury (the "Nationwide Class").

28. The Arizona Class is sometimes referred to as "the Class"

29. This action has been brought and may properly be maintained on behalf of the Classes proposed above under the criteria of Federal Rule of Civil Procedure 23 ("Rule 23"), insofar as the Classes meet all the requirements of Rule 23:

   a. *Numerosity*: The members of the Classes are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes that the proposed Classes contain thousands of purchasers of the infant formula who have been damaged by

Defendant's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff, but records in the sole control of the Defendant will enable Plaintiff to determine the size of the Classes.

  b. ***Existence and Predominance of Common Questions of Law and Fact*:** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. Common questions of law and fact include, but are not limited to, the following:

    i. Whether Defendant's claims about the infant formula discussed above are true, or are reasonably likely to deceive;

    ii. Whether the alleged conduct constitutes violation of the Arizona Consumer Fraud Act;

    iii. Whether the alleged conduct constitutes a breach of the express warranty which exists between Defendant and Plaintiff and other members of the Classes;

    iv. Whether the alleged conduct constitutes unjust enrichment;

    v. Whether Defendant engaged in deceptive advertising;

    vi. Whether Defendant knowingly made material deceptive claims regarding the its Gerber Good Start Gentle infant formula;

    vii. Whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss; and

    viii. Whether Plaintiff and Class members are entitled to injunctive relief.

      c.     ***Typicality*:** Plaintiff's claims are typical of the claims of the other members of the Classes because, *inter alia*, all Class members were injured through the uniform misconduct described above, and all Class members were subject to Defendant's deceptive statements, including deceptive claims that accompanied each and every container of infant formula sold. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Classes.

      d.     ***Adequacy of Representation*:** Plaintiff will fairly and adequately protect the interests of the members of the Classes. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Classes.

      e.     ***Superiority*:** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for the Classes, on an individual basis, to obtain effective redress for the wrongs done to them by Defendant. Furthermore, individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding and presents no unusual management difficulties under the circumstances here.

30. Unless the Classes are certified, Defendant will retain monies received as a result of its conduct that were taken from Plaintiff and Class members. Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be deceived.

## COUNT I

**Violation of Arizona Consumer Fraud Act**
**(Ariz. Revised Stat. §§44-1522 *et. seq.*)**
**(On Behalf of the Arizona Class)**

31. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 30 above, as set forth fully herein.

32. Plaintiff brings this claim individually and on behalf of the Class.

33. Defendant has engaged in deceptive or unfair acts or practices in violation of the ACFA by engaging in the acts and practices specified above.

34. These practices constitute fraud, false pretense, false promise, and/or misrepresentation on the part of Defendant.

35. Plaintiff and members of the Class have relied on Defendant's deceptive representations in their purchases of Defendant's infant formula, believing that the formula would reduce the likelihood of developing allergies.

36. Plaintiff and members of the Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices.

12

37. Furthermore, because of Defendant's concealment of its deceptive acts and practices from public view, Plaintiff and members of the Class could not have become aware of the acts alleged herein until shortly before this complaint was filed. As a result, the ACFA's statute of limitations has been tolled, as the facts alleged above reveal.

38. As a result of Defendant's deceptive acts and practices, Plaintiff and the Class have been damaged up to the amount of the purchase price of the infant formula they purchased.

## COUNT II

**Breach of Express Warranty**
**(On Behalf of the Nationwide Class)**

39. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 30 above, as if set forth fully herein.

40. Plaintiff brings this claim individually and on behalf of the Class.

41. Plaintiff, and each member of the Class, formed a contract with Defendant at the time Plaintiff and the other members of the Class purchased their formula. The terms of that contract include the claims regarding the formula's ability to help reduce the likelihood of developing allergies made by Defendant through its marketing and advertising efforts, as set forth above. This product advertising constitutes express warranties, became part of the basis of the bargain, and is part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendant on the other.

42. Plaintiff and the Class relied on these express warranties as being a part of the bargain between the parties.

13

43. All conditions precedent to Defendant's liability under the contract have been performed by Plaintiff and the Class.

44. Defendant breached the terms of this contract, including the express warranties, with Plaintiff and the Class by failing to provide formula which provided the benefits advertised by Defendant – namely, by failing to provide formula which actually reduced the likelihood of infants developing allergies.

45. As a result of Defendant's breach of its express warranties, Plaintiff and the Class have been damaged up to the amount of the purchase price of the formula they purchased.

## COUNT III

**Unjust Enrichment**
**(On Behalf of the Arizona and Nationwide Classes)**

46. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 30 above, as if set forth fully herein.

47. Plaintiff brings this claim individually and on behalf of the Classes.

48. As a result of Defendant's material deceptive advertising, marketing and/or sale of its infant formula, Defendant was enriched at the expense of Plaintiff and all other Class members through their purchase of the infant formula, because the formula did not provide the benefits as represented.

49. Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits it received from Plaintiff and the Class as

the result of its deceptive marketing and advertising practices.  Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiff and the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment:

A. Certifying the Classes as requested herein;

B. Appointing Plaintiff as Class representative and her undersigned counsel as Class counsel;

C. Awarding Plaintiff and the proposed Class members damages;

D. Awarding statutory damages, including treble damages, to the extent available;

E. Awarding restitution and disgorgement of Defendant's revenues to Plaintiff and the proposed Class members;

F. Awarding injunctive relief as permitted by equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful;

G. Ordering Defendant to engage in a corrective advertising campaign;

H. Awarding attorneys' fees and costs; and

I. Providing such further relief as may be just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial of her claims by jury to the extent authorized by law.

Dated:   November 3, 2014        BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.

/s/ Patricia N. Syverson
ELAINE RYAN (012870)
PATRICIA SYVERSON (020191)
LINDSEY M. GOMEZ-GRAY (027416)
2325 E. Camelback Rd., Suite 300
Phoenix, AZ 85016
Tel: (602) 274-1100
Fax: (602) 274-1199
eryan@bffb.com
psyverson@bffb.com
lgomez@bffb.com

FRED T. ISQUITH
JANINE POLLACK
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
270 Madison Avenue
New York, NY  10016
Tel: (212) 545-4600
Fax: (212) 545-4653
isquith@whafh.com
pollack@whafh.com

THEODORE B. BELL
CARL V. MALMSTROM
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC
55 W. Monroe St., Suite 1111
Chicago, IL 60603
Tel: (312) 984-0000
Fax: (312) 984-0001
tbell@whafh.com
malmstrom@whafh.com

*Attorneys for Plaintiff*